UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDRE DOLBERRY,

                               Plaintiff,

                                                                                    <u>DECISION AND ORDER</u>

                                                                                    02-CV-6418L

                    v.

SUPERINTENDENT LEVINE,
TIMOTHY GRAHAM,
SERGEANT HEICHT,
CIVILIAN KELLNER,
OFFICER LEWIS,
DIRECTOR OF IHP, THOMAS EAGEN,
EBLING,
MEEGAN,
WEBER, of the Grievance Committee,
ANDREW KONKLE, Of The Law Library,
NURSE BEARDSLEY,
SGT. LYONS,

                                                         Defendants.
_____

       Plaintiff, Andre Dolberry, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") alleges that defendants, all of whom were at all relevant times employed by DOCS at Wyoming Correctional Facility ("Wyoming"), have violated his rights under the United States Constitution in a number of ways. Specifically, Plaintiff alleges that in 2000, while he was incarcerated at Wyoming, he was: assaulted by one of the defendants, while three other defendants

looked on and did nothing to intervene; denied adequate medical care, cleaning supplies, and showers; denied his constitutional right of access to the courts; and retaliated against for attempting to exercising his First Amendment rights. Plaintiff also alleges that defendants put his safety at risk by seeking to house plaintiff in the same cell block with a known "enemy" of his. Plaintiff contends that defendants' actions violated his rights under the First, Third, Sixth, Eighth, and Fourteenth Amendments. He seeks $3 million in damages.

There are currently eleven defendants: Wyoming Superintendent Paul Levine; Correction Lieutenant Timothy Graham; Correction Sergeants Gregory Hecht and Kenneth Lyons; Correction Officers Kevin Lewis, Kevin Meegan, Andrew Konkle (misidentified in the complaint as "Andrews"), and Charles Ebeling; mail room clerk Kathleen Kellner; nurse Beverly Beardsley; and Jeffrey Weber, the Supervisor of the Inmate Grievance Program at Wyoming.[1]

Defendants have moved for summary judgment dismissing all of plaintiff's claims except for his Eighth Amendment claim against defendants Lewis, Hecht, and Meegan, which is based on an alleged assault on plaintiff by Lewis on April 25, 2000. Plaintiff has also filed several motions for summary judgment in his favor, as well as a number of other motions seeking various forms of relief. For the reasons that follow, defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's motions for summary judgment are denied.

---

[1] Plaintiff's claims against several other defendants were dismissed by the Court on November 7, 2002 and January 29, 2003.

# DISCUSSION

## I. Summary Judgment

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When the non-moving party is proceeding *pro se*, then the Court should read the pleadings "liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II. Claims Relating to Grievance Procedures

Plaintiff alleges that several defendants committed various improprieties in connection with grievances that plaintiff filed. He alleges, for instance, that Lyons "sign[ed] off" on a grievance that plaintiff had filed, after plaintiff "refused to sign off" on the grievance. Dkt. #15 ¶¶ 12, 37. The gist of this claim seems to be that Lyons falsely indicated on the grievance form that plaintiff had signed off on the grievance, *i.e.*, that he had indicated his approval or acceptance of the handling or disposition of the grievance.

The record shows that the grievance in question, WYO-10981-00, was investigated by Lyons and then denied for lack of evidence by the Inmate Grievance Resolution Committee on May 16, 2000. Dkt. #233 at 42. Even if Lyons falsely "signed off" on the grievance, there is no indication that this in any way affected the ultimate disposition of the grievance. This allegation therefore does not give rise to state a constitutional claim.

Plaintiff also alleges that defendants Weber, Lewis and Levine violated his due process rights by discarding, destroying, or failing to investigate grievances that plaintiff had filed. Dkt. #15 ¶¶ 4, 11. These allegations, like the allegations concerning Lyons, fail to state a constitutional claim. "[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly. A violation of the inmate grievance procedures does *not* give rise to a claim under section 1983." *Avent v. Doe*, No. 9:05-CV-1311, 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008). *See also Washington v. Early*, No. 1:03-cv-05263, 2008 WL 795603, at *15 (E.D.Cal. Mar. 24, 2008) (stating that "[t]here is no constitutional right to an inmate appeals process," and holding that plaintiff's allegation that defendants interfered with the prison grievance process, confiscated and destroyed appeals, and denied him the right to file appeals, did not state constitutional claim); *Cancel v. Goord*, No. 00 Civ.2042(LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983").

Additionally, to the extent that plaintiff asserts such claims against Levine, the claims must be dismissed for lack of personal involvement on Levine's part. The record shows that

Levine's only connection with the events giving rise to this lawsuit was to refer plaintiff's complaints and grievances to staff members for investigation, and to determine an appeal by plaintiff on one of his grievances.  Such actions do not satisfy the personal involvement requirement for a § 1983 claim.  *See Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Allah v. Poole*, 506 F.Supp.2d 174, 192 (W.D.N.Y. 2007).

**III. Claim Against Nurse Beardsley**

Plaintiff alleges that following Lewis's alleged assault on him on April 25, 2000, he "requested to see the Nurse Beardsley and officers ignored Dolberry's request." Dkt. #15 at 15. He also alleges that he "asked a few nurses for medication who keep walking" past his cell without responding to his request. *Id.*  He states that eventually a nurse by the name of Wheeler came on duty and she provided him with medication. *Id.*

These allegations fail to state a claim against Beardsley.  To make out a cognizable claim under the Eighth Amendment, plaintiff would have to show that Beardsley's "actions or omissions amounted to 'deliberate indifference to a serious medical need.'" *Lee v. Frederick* 519 F.Supp.2d 320, 323 (W.D.N.Y. 2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). All that plaintiff has alleged, however, is that the *officers* denied his request to see Beardsley, and that "a few" unidentified nurses walked past his cell and ignored his requests for medication.[2]

---

[2]Plaintiff's allegation that the officers denied his request for medical attention is addressed in Part VIII, *infra*.

There is no evidence that Beardsley was one of those nurses, or that she saw or had any contact with plaintiff that day, much less that she deliberately ignored plaintiff's serious medical need.

**IV. Denial of Cleaning Supplies**

Plaintiff alleges that defendants Meegan and Lewis violated his Eighth Amendment rights by denying him showers and cleaning supplies for several weeks. (Dkt. # 15 pp. 4, 7). There is documentary evidence that plaintiff received showers and cleaning supplies throughout his time at Wyoming, *see* Dkt. #233 at 50-51, but even if plaintiff's allegations in this regard are true, these facts would not give rise to a violation of the Eighth Amendment. *See*, *e.g.*, *West v. Kussmaul*, No. 06-C-068, 2006 WL 1518989, at *8 (E.D.Wis. May 31, 2006); *Davidson v. Murray*, 371 F.Supp.2d 361, 371 (W.D.N.Y. 2005); *McNatt v. Unit Manager Parker*, No. 3:99CV1397, 2000 WL 307000, at *4 (D.Conn. Jan. 18, 2000); *Briggs v. Heidlebaugh*, No. CIV.A. 96-3884, 1997 WL 318081, at *3 (E.D.Pa. May 21, 1997); *Hamilton v. Peters*, 919 F. Supp. 1168, 1173 (N.D.Ill. 1996).

In addition, plaintiff does not allege, nor is there any evidence, that he suffered a physical injury as a result of these actions. Since plaintiff is no longer at Wyoming and does not seek any injunctive relief on this claim, it must also be dismissed pursuant to 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See Stanley v. Page*, 44 Fed.Appx. 13, 15 (7th Cir. 2002) (inmate failed to make out cognizable Eighth Amendment claim based on denial of cleaning

supplies, since he had not identified any injury suffered as a result of that denial); *Talley v. Johnson*, No. 4:07-CV-177, 2008 WL 2223259, at *3 (M.D.Ga. May 1, 2008) (dismissing inmate's claim alleging "unsanitary shower" under § 1997e(e), since plaintiff had made no allegations of physical injury). Although plaintiff does allege that he suffered a skin rash due to the lack of showers, that is a *de minimis* injury that does not give rise to a claim. *See Brown v. Pierce*, No. 05-1322, 2008 WL 619288, at *5 (C.D.Ill. Mar. 4, 2008) ("several courts have held that a rash resulting from cell conditions is a *de minimus* injury that does not rise to the level of a constitutional violation") (collecting cases); *see also Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (§ 1997e(e) "requires a prior showing of physical injury that need not be significant but must be more than *de minimis*"); *Moore v. McGinnis*, No. 01-CV-6588, 2004 WL 2958471, at *9 (W.D.N.Y. Dec. 20, 2004) ("plaintiff alleges only *de minimis* physical injury, and is ... barred [under § 1997e(e)] from pursuing claims for mental and emotional injury"); *cf. Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (stating that alleged sexual assaults qualified as physical injuries for purposes of § 1997e(e), and observing that "[c]ertainly, the alleged sexual assaults would constitute more than *de minimis* injury if they occurred").

**V. Failure to Protect**

Plaintiff claims that his constitutional rights were violated when defendants attempted to place him into a cell block that also housed a certain inmate, Peterson, who was an enemy of plaintiff. Plaintiff alleges that this put his safety at risk. At his deposition, however, plaintiff

testified that he never was moved into the cell block in question, and was never attacked by Peterson at Wyoming. *See* Dkt. #219 at 83-84.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Under 42 U.S.C. § 1983, prison officials are liable for harm suffered by an inmate if the officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988). In order to demonstrate such deliberate indifference, the plaintiff must show that "he is incarcerated under conditions posing a substantial risk of serious harm" and that the prison official had "knowledge that an inmate face[d] a substantial risk of serious harm and he disregard[ed] that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620.

As stated, there is no evidence that plaintiff was subjected to *any* physical harm, or even a genuine risk of physical harm, as a result of defendants' actions, since he never was moved into the cell block in question. Likewise, there is no evidence that defendants acted with deliberate indifference to plaintiff's safety with respect to these matters. This claim must therefore be dismissed. *See Barnes v. Henderson*, 490 F.Supp.2d 313, 318 (W.D.N.Y. 2007).

**VI. Denial of Right of Access to the Courts**

Plaintiff alleges that defendants Konkle, Lewis and Kellner violated his constitutional right of access to the courts. Plaintiff claims that Konkle did so by denying plaintiff access to the

prison law library, law books and materials, and notary services. (Dkt. #15 at 10, 27). Similarly, he alleges that Lewis deliberately deprived him of writing paper on certain occasions at a time when plaintiff had a lawsuit pending, the apparent implication being that this was intended to or did impede plaintiff's ability to pursue the lawsuit. *Id.* at 15, 28.

Plaintiff also alleges that "Kellner on several occasions stop [sic] Dolberry's outgoing legal correspondances [sic]." *Id.* at 6. Plaintiff also alleges that on some occasions he did not receive his incoming mail from the courts, and he alleges that this was due to Kellner's intercepting plaintiff's legal mail. *Id.* at 29-31.

"To state a claim for denial of access to the courts ... a plaintiff must allege that the defendant took or was responsible for actions that "hindered [a plaintiff's] efforts to pursue a legal claim."" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)) (additional internal quotation marks omitted). In other words, the plaintiff must show "actual injury ... such as the dismissal of an otherwise meritorious legal claim." *Id.* (quotation marks omitted). *See also Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) ("Because law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts,' prisoners must demonstrate 'actual injury' in order to have standing") (quoting *Lewis*, 518 U.S. at 351).

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. Nevertheless, "an isolated incident of mail tampering is usually insufficient to establish a

constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Id.* (quoting *Cancel v. Goord*, No. 00 Civ.2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001)) (additional citations omitted). Courts in this circuit have therefore "generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face." *Id.* (finding that inmate's allegations of two instances of mail interference insufficient to state a claim for denial of access to the courts because inmate had "not alleged that the interference with his mail either constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any way prejudiced his legal actions").

Applying these standards to the case at bar, I find that defendants are entitled to summary judgment on plaintiff's claims concerning his right of access to the courts and alleged interference with his legal mail. The evidence conclusively demonstrates that a number of lawsuits that plaintiff had initiated in the Southern District of New York were dismissed prior to his arrival at Wyoming in February 2000. *See* Dkt. #219 at 9-35. It also appears that plaintiff appealed some of those dismissals to the Second Circuit, where they were consolidated and dismissed as frivolous on May 16, 2000. *Id.* at 37-55.

Plaintiff has not presented any evidence to contradict these facts, nor has he shown that his pursuit of some other, *non*frivolous lawsuit was impeded by defendants' actions. *See Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001) (to succeed on an access-to-courts claim, plaintiff must demonstrate that a "nonfrivolous legal claim had been frustrated or was being impeded")

(quoting *Lewis*, 518 U.S. at 353), *cert. denied*, 535 U.S. 1037 (2002). In addition, the evidence–including evidence submitted by plaintiff himself–shows that he *was* permitted to take out law books during the period in question. See Dkt. #140-4 at 23-25; Dkt. #228 at 5-11.

As to plaintiff's claims against Kellner, again the record shows that plaintiff did not suffer any "actual injury," for the same reasons stated with respect to his law-library claims. Furthermore, while there is evidence that Kellner did at times take certain actions with respect to the handling of plaintiff's mail (most if not all of which was non-privileged), the uncontradicted evidence shows that she did so for legitimate reasons, in accordance with established DOCS policies. On some occasions, for example, Kellner prepared misbehavior reports against plaintiff because it appeared that he had attempted to reuse cancelled stamps, or because he had used a different inmate's name and inmate number on the return address of his outgoing mail, apparently in order to use the other inmate's postage allowance after plaintiff's had been exhausted. Dkt. #227 at 3-6. Plaintiff admitted at his deposition that he had engaged in such behavior. *See* Dkt. #219 at 58-59, 62-67.

Furthermore, even assuming that there were some instances in which Kellner interfered with plaintiff's legal mail without a legitimate reason (although there is no evidence that she did), there is no basis in the record upon which a rational factfinder could conclude that these were anything more than isolated incidents that did not give rise to an ongoing practice and did not chill plaintiff's right of access to the courts. *See Davis*, 320 F.3d at 351-52. Kellner is therefore entitled to summary judgment.

**VII. Retaliation**

Plaintiff alleges that virtually every act giving rise to his various claims was taken, in part at least, out of retaliatory motives. All these claims must be dismissed.

In order to establish a First Amendment retaliation claim, plaintiff must show (1) that he engaged in constitutionally protected speech or conduct, (2) that the defendants took adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action. *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Although plaintiff has shown that he engaged in protected conduct, since he appears to have frequently filed or been pursuing various grievances and lawsuits, he has not shown that any adverse actions of which he complains were causally connected to that activity. Viewing the evidence in the light most favorable to plaintiff, all he has shown is that at times he had problems with or complaints about various DOCS employees. Simply adding an allegation that they acted out of retaliatory motives is easy to do, but it is not enough. It is, in fact, because of the "ease with which a retaliation claim may be fabricated," *Nunez v. Goord*, 172 F.Supp.2d 417, 431 (S.D.N.Y. 2001), that courts "approach prisoner claims of retaliation 'with skepticism and particular care.'" *Pettus v. McGinnis*, 533 F.Supp.2d 337, 339 (W.D.N.Y. 2008) (quoting *Dawes*, 239 F.3d at 491); *see also Davis*, 320 F.3d at 352 ("Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a

constitutional violation–can be characterized as a constitutionally proscribed retaliatory act'")

(quoting *Dawes*, 239 F.3d at 491).

**VIII. Eighth Amendment Claim Against Lewis, Hecht, Ebeling and Meegan**

Plaintiff alleges that on April 25, 2000, as he was being escorted by defendant Lewis to plaintiff's cell, Lewis, without provocation, assaulted plaintiff. He also alleges that dependants Hecht, Ebeling and Meegan witnessed the assault but failed to intervene, and that all these defendants refused to allow plaintiff to get medical attention for his injuries suffered in the assault.

Defendants concede that there are genuine issues of fact concerning this claim, although they contend that this claim should be dismissed as to defendant Ebeling. They allege that Ebeling was in a different room from the area where the alleged assault occurred, and that Ebeling could not have seen the assault from that room.

Although defendants have submitted records indicating that Ebeling was in an enclosed "console room" at the time of the alleged assault (which did not occur in the console room but in an open corridor), the Court cannot simply accept the accuracy of those records on defendants' motion for summary judgment, given plaintiff's allegation that Ebeling was present in the immediate area of the assault. Ebeling's motion for summary judgment on this claim is therefore denied. *See Dixon v. Ragland*, No. 03 CIV. 826, 2007 WL 4145453, at \*8 (S.D.N.Y. Sept. 11, 2007) (finding that a material issue of fact existed as to whether two defendants "were in or about the vicinity where the assault on Dixon is alleged to have occurred and witnessed the incident"),

*Report and Recommendation adopted in part, rejected on other grounds in part*, 2007 WL 4116488 (S.D.N.Y. Nov 16, 2007); *Lewis v. City of Chicago*, No. 04 C 3904, 2005 WL 947195, at *7 (N.D.Ill. Apr. 11, 2005) ("Genuine issues of material fact exist as to ... whether Pena and De Van witnessed Soto using a choke hold [on plaintiff] and had a realistic opportunity to intervene to prevent the choke hold.  Given these disputed facts, Pena and De Van's summary judgment motion on Count I must be denied").

**IX. Revocation of Plaintiff's IFP Status under 42 U.S.C. § 1915(g)**

Defendants have requested that, as to the defendants who remain in this action, plaintiff's *in forma pauperis* status be revoked pursuant to 42 U.S.C. § 1915(g), which provides that

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
>
> Under this "three strikes" rule, then,
>
> [a] prisoner who accrues three strikes is barred from proceeding in forma pauperis in future suits with respect to prison conditions.  There is an exception to this bar when "the prisoner is under imminent danger of serious physical injury."  And, of course, prisoners with three strikes are free to continue filing suits with respect to prison conditions so long as they pay filing fees and court costs.

*Ortiz v. McBride*, 380 F.3d 649, 658 n. 7 (2d Cir. 2004) (citations omitted), *cert. denied*, 543 U.S. 1187 (2005).

Defendants base this request on docket sheets from a number of other cases that plaintiff has filed in the Southern District of New York and appeals that he has filed in the Second

Circuit, all of which were dismissed as frivolous or for failure to state a claim. *See* Dkt. #219 at 9-55. Defendants also assert that there is no indication that plaintiff, who is no longer at Wyoming, is currently under imminent danger of serious physical injury with respect to the matters raised in this action.

Even if defendants' assertions in this regard are correct, however, their request must be denied. Section 1915(h) provides that "[a]s used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." That provision has been interpreted to mean that a plaintiff who was not incarcerated at the time that the complaint was filed is not considered a "prisoner" for purposes of the three-strikes rule. *See*, *e.g.*, *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000) ("prisoner" as used in § 1915(g) means an individual who is detained at the time his action or appeal is filed); *Kerr v. Puckett,* 138 F.3d 321, 323 (7th Cir. 1998) (holding that "a convict out on parole is not a prisoner, or a 'person incarcerated or detained in any facility'").

In the case at bar, it appears that plaintiff was not incarcerated when he commenced this action. On the original complaint, which was filed on August 6, 2002, plaintiff identified his "present place of confinement" as "Cayuga Corr. Facility," but next to that he wrote, "('Released')." The DOCS internet inmate lookup service, http://nysdocslookup.docs.state.ny.us, indicates that plaintiff was released from custody on

March 27, 2002, and returned to custody on a new charge on July 14, 2003.[3]  Accordingly, the

three-strike provision of § 1915(h) does not apply to him.[4]

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #219) is granted in part and denied in part.  All of plaintiff's claims other than his Eighth Amendment claim against defendants Lewis, Hecht, Ebeling and Meegan are dismissed.  In all other respects, defendants' motion is denied.

Plaintiff's motions for summary judgment (Dkt. #190, #196, #235, #236, and #237) are denied.

Plaintiff's motions that a "decision on the dispositive motions be decided" (Dkt. #259), "for an order dismissing the Defendants defense" (Dkt. #260), for a "summary jury trial or

---

[3]The inmate lookup website also indicates that plaintiff was again released from custody on December 4, 2006 and returned to custody for violating his conditions of parole on January 17, 2008.

[4]I also note that defendants have submitted a declaration of Thomas G. Eagen, the Director of the DOCS Inmate Grievance Program, stating that he has searched the relevant database for plaintiff's grievance appeals, and found no record that plaintiff filed any appeals from grievance determinations made in 2000 at Wyoming.  Dkt. #223.  Defendants do not, however, appear to argue that any of plaintiff's claims should be dismissed for failure to exhaust administrative remedies under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  Since "the PLRA's exhaustion requirement is not jurisdictional in nature, and is, therefore, subject to equitable doctrines such as tolling, estoppel and waiver," *Liner v. Goord*, 310 F.Supp.2d 550, 554 (W.D.N.Y. 2004) (citing *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003)), I decline to decide whether plaintiff has satisfied the exhaustion requirement as to any of his claims.

minitrial" (Dkt. #263, #264), and "for an order to resolve the remaining unresolved summary judgment motions" (Dkt. #265) are denied as moot.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       July 28, 2008.